## PEOPLE v. MOSS

EVIDENCE—CREDIBILITY OF WITNESSES—QUESTION FOR JURY.
The role of the jury as trier of fact, having seen and heard a criminal defendant and other witnesses, is to evaluate the evidence, both direct and circumstantial, as to credibility and importance and thereby arrive at a verdict.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 December 5, 1968, at Detroit. (Docket No. 3,908.) Decided February 28, 1969.

Quention Lavon Moss was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelly,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Stephen H. Boak,* Assistant Prosecuting Attorney, for the people.

*Gilbert A. Donahue,* for defendant on appeal.

BEFORE: LEVIN, P. J., and HOLBROOK and ROOD,* JJ.

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

REFERENCE FOR POINTS IN HEADNOTE
31 Am Jur, Jury §§ 2-4, 60, 64.

PER CURIAM. Defendant Quention Lavon Moss was tried by jury, convicted of murder in the first degree[1] and sentenced to life imprisonment. On appeal there is one assignment of error. He contends that there was insufficient evidence to support the jury's verdict of guilty.

About 5 p.m. on April 1, 1966, Gabrail Quasquargis, the proprietor of Jerry's Market, was found dead in the store. An autopsy showed that he had been slashed and stabbed 36 times, once through the heart, allegedly with a butcher knife and possibly a meat cleaver found in the store. In June, 1966, the defendant was located in Los Angeles and brought back to Michigan for trial.

The record discloses that the victim's wife testified that she was in the store at 1:30 p.m. when a man who looked like the defendant to her threatened to kill her husband. Another witness testified that later that afternoon, while she was in the store, the defendant became angry and threatened the victim.

Several witnesses who lived in a building across the street from the grocery store saw the defendant shortly after the crime had been committed. They easily recognized the defendant since he was a former tenant of the building. One witness, James L. Watts, a friend of the defendant, testified that the defendant came to his apartment and appeared to be hurt. Mr. Watts testified that the defendant told him that he and the grocer had a misunderstanding, that he had cut and tried to rob the grocer and had killed him. Watts stated that he gave the defendant some different clothes and the defendant put his own clothes in a paper bag. Another tenant in the building testified that she saw the defendant emerge from the basement of the building and leave

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

a paper bag in the garbage receptacle at the rear of the building.

The defendant's clothes, recovered from the garbage receptacle, were found to contain blood stains of type A, the victim's type. Various blood stains in the grocery store were found to belong to type O, the defendant's type.

The defense consisted of testimony by the defendant's employer that on April 1, 1966, the defendant punched in to work a few minutes before 7 a.m. and left at 3:25 p.m. He also said that Friday, April 1, 1966, was payday and that the defendant received a paycheck for over $100. The check was cashed at a restaurant across the street from defendant's place of employment. A fellow employee testified that at 3:30 p.m. he drove the defendant to a point about 2 or 3 blocks from the factory. It appears that the factory was a short distance (less than a mile) from the grocery store.

The defendant took the stand in his own defense. He stated that he stopped at the grocery store at about 4:30 p.m. to buy some cigarettes and saw a man, a little larger than himself, striking the victim with a large knife. When he tried to aid the grocer, the attacker assaulted him and he was badly cut on his left hand. He then ran out of the store somewhat excited and disoriented. He was bleeding heavily and remembered that his friend, James Watts, lived across the street so he went to Watts' apartment. He did not communicate with the police because he was afraid of retaliation by the attacker who had threatened to kill him. He was also fearful of implication because he had a prior criminal record. The next day when he discovered the police were looking for him, he decided to leave the state.

The evidence clearly presented a question of fact as to defendant's guilt for consideration by the jury.

The jury saw and heard the defendant and the other witnesses. It is the function of the trier of fact to determine credibility and the weight to be given the evidence presented. There was ample evidence, though some of it was circumstantial, from which the jury could have properly found the defendant guilty beyond a reasonable doubt.

Affirmed.